UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/16/21

Documented NY,

                Plaintiff,

—v—

United States Department of State, et al.,

                Defendants.

20-CV-1946 (AJN)

MEMORANDUM
OPINION
& ORDER

ALISON J. NATHAN, District Judge:

       Plaintiff Documented NY on September 17, 2020, filed its second motion to expedite the U.S. Department of State's production of documents in response to Plaintiff's outstanding request under the Freedom of Information Act. State in its latest status update committed to processing 300 pages each month. Plaintiff most recently requested that the remaining 2,600 pages be produced by November 30, 2021, and that all three Defendants produce *Vaughn* indices by December 15, 2021, so that Plaintiff may consider any challenges to State's exemptions and the adequacy of its search. For the reasons that follow, the Court denies in part Plaintiff's motion and orders State to process a minimum of 400 pages of documents each month.

       **I.**      **Background**

       On October 4, 2019, President Trump issued Proclamation 9945, which suspended the entry of any immigrant that could not demonstrate the means to obtain private health insurance within 30 days of arriving in the United States. Proclamation No. 9945, 84 Fed. Reg. 53,991 (October 4, 2019). The proclamation was enjoined on November 3, 2019, before it went into effect. *Doe #1 v. Trump*, 414 F. Supp. 3d 1307 (D. Or. 2019) (issuing a temporary restraining order); *Doe v. Trump*, 418 F. Supp. 3d 573 (D. Or. 2019) (issuing a nationwide preliminary

1

injunction).[1]  President Biden later revoked the proclamation on May 14, 2021.  Proclamation No. 10209, 86 Fed. Reg. 27,015 (May 14, 2021).

Plaintiff is a non-profit news site that covers, among other topics salient to New York City's immigrant population, changes in federal immigration policy.  Complaint at 3–4, Dkt. No. 6.  Its coverage has included reporting on the effects of Proclamation 9945.[2]

On November 21, 2019, Plaintiff submitted a FOIA request to the U.S. Department of State, the U.S. Department of Health and Human Services, and the Office of Management of Budget, for records pertaining to Proclamation 9945 and requested that it receive expedited processing.  Schwarz Decl., Ex. 1, Dkt. No. 21.  State denied the expedited-processing request on February 24, 2020.  *Id.*

Plaintiff on March 4, 2020, filed the present action against the Defendant agencies as authorized by 5 U.S.C. § 552(a).  On July 16, 2020, it filed a motion to expedite State's release of documents responsive to its FOIA requesting, seeking the production of 3,000 pages in the first two weeks and 2,500 pages each following month.  Pl. First Motion, Attach. 1, Dkt. No. 19; Pl. Br. at 9, Dkt. No. 20.[3]  State filed an opposition, suggesting it instead process 300 pages per month, State First Resp., Dkt. No. 22, and Plaintiff filed a reply, Pl. First Reply, Dkt. No. 24.  The Court on July 28, 2020, denied Plaintiff's motion and adopted State's 300-page monthly

---

[1] The district court's injunction was vacated by the Ninth Circuit on December 31, 2020.  *Doe #1 v. Trump*, 984 F.3d 848 (9th Cir. 2020), *vacated sub nom. Doe #1 v. Biden*, 2 F.4th 1284 (9th Cir. 2021)

[2] *See, e.g.*, Mazin Sidahmed, *Presidential Proclamation Sows Confusion at State Department*, Documented NY (Feb. 24, 2020), https://documentedny.com/2020/02/24/presidential-proclamation-sows-confusionwithin-the-state-department/.

[3] Documented NY does not challenge production by the other two Defendants, with whom Plaintiff has reached production agreements.  Pl. Br. at 4 n.7.

target, emphasizing the constraints that the COVID-19 pandemic had imposed on State's production capacity.  Dkt. No. 26.  The Court also ordered that State file a status update in September.  *Id.*

On September 11, 2020, State explained that it could process only 200 pages each month because of constraints imposed by obligations in other FOIA litigation and the COVID-19 pandemic as well as due to the time-consuming nature of the documents that Plaintiff requested. First Status Update, Dkt. No. 27.  This update prompted Plaintiff to file a second motion to expedite, this time requesting that the Court order State "either to produce 1000 pages per month or to process 1500 pages per month," and that State produce a *Vaughn* index so that Plaintiff may challenge State's exemptions.  Second Motion at 2, Dkt. No. 28.  The motion is fully briefed. State Second Resp., Dkt. No. 30; Pl. Second Reply, Dkt. No. 32.

The Court on August 26, 2021, ordered State to file a second status update, which it did on September 3, 2021.  Dkt. No. 38.  State explained that its production capacity continued to be limited by its obligations in other litigation and by the COVID-19 pandemic, but that it had met or exceeded its 200-page processing commitment each month since its first status update, and that it could now commit to its typical pre-pandemic rate of processing 300 pages per month. Second Status Update at 2–3 & nn.2, Dkt. No. 39.  At that pace, with approximately 2,600 pages of potentially responsive documents left to process, State estimated that it would complete processing by May 31, 2022.  *Id.* at 3.  Plaintiff filed a reply, requesting that all 2,600 remaining pages be processed and produced by November 30, 2021, and that all three Defendants produce *Vaughn* indices by December 15, 2021.  Pl. Third Reply, Dkt. No. 40.

**II.     Legal Standard**

Generally, a plaintiff seeking expedited processing of a FOIA request must demonstrate a "compelling need." 5 U.S.C. § 552(a)(6)(E)(i).[4] A compelling need can be shown either when "failure to obtain requested records on an expedited basis . . . could reasonably be expected to pose an imminent threat to the life or physical safety of an individual," or when the plaintiff is "primarily engaged in disseminating information" and there is "urgency to inform the public concerning actual or alleged Federal Government activity." *Id.* §§ 552(a)(6)(E)(v)(I)–(II).

If expedited processing is warranted, the agency "shall process [the request] as soon as practicable." *Id.* § 552(a)(6)(E)(iii). This requirement does not impose on the agency "any particular timeframe to release . . . the records sought" but rather "moves the plaintiff's request 'to the front of the agency's processing queue.'" *Landmark Legal Found. v. E.P.A.*, 910 F. Supp. 2d 270, 275 (D.D.C. 2012) (quoting *Leadership Conf. on C.R. v. Gonzales*, 404 F. Supp. 2d 246, 259–60 (D.D.C. 2005)). In opposing a plaintiff's motion to expedite the processing rate, the agency bears the burden of presenting "credible evidence that disclosure within such time period [requested by the plaintiff] is truly not practicable." *Brennan Ctr. for Just. at N.Y. Univ. Sch. of L. v. U.S. Dep't of State*, 300 F. Supp. 3d 540, 549 (S.D.N.Y. 2018) (quoting *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 416 F. Supp. 2d 30, 39 (D.D.C. 2006)). Courts consider, for example, evidence of the agency's resource constraints, obligations to other FOIA requests, whether the request implicates sensitive or confidential materials, and whether there is evidence that the agency is not representing its capacity in good faith. *See Elec. Priv. Info. Ctr. v. Dep't of Just.*, 15 F. Supp. 3d 32, 43 (D.D.C. 2014); *Elec. Priv. Info. Ctr.*, 416 F. Supp. 2d at 40 ("[V]ague assertions, unsupported by credible evidence, are insufficient to demonstrate that further delay is

---

[4] Expedited processing is also required in cases determined by an agency's regulations. 5 U.S.C. § 552(a)(6)(E)(ii)

currently necessitated."); *cf. Brennan Ctr. for Just.*, 300 F. Supp. 3d at 549–50 (finding no credible evidence to explain an agency's delay).[5]

**III.    Analysis**

Plaintiff argues that it has a "compelling need" to receive the documents it has requested, entitling it to expedited processing, Pl. Br. at 7–9; Pl. First Reply at 2–5, and that State's rate of processing 300 pages each month is not "as soon as practicable," even taking account of the COVID-19 pandemic, Second Motion at 1–2; Pl. Second Reply at 1–2.  Related to its expedited-processing request, Plaintiff also requests that each Defendant produce a *Vaughn* index of its production.  Pl. Third Reply.

**A.  Compelling Need**

State does not dispute that Plaintiff satisfies two of the three requirements of a "compelling need" because Plaintiff is primarily engaged in disseminating information to the public and its request for documents relating to Presidential Proclamation 9945 concerns a federal government activity.  *See Landmark Legal Found.*, 910 F.Supp.2d at 275 ("Courts regularly find that reporters and members of the media qualify . . . .").  Instead, State contests that there is adequate "urgency to inform the public." State First Resp. at 9 (quoting 5 U.S.C. § 552(a)(6)(E)(v)(II)); State Second Resp. at 2.

Courts construe urgency narrowly, as defined by three factors: (1) "whether the request concerns a matter of exigency to the American public; (2) whether the consequences of delaying

---

[5] To the extent that Plaintiff seeks to expedite State's processing of its FOIA request by showing "good cause" under the Civil Priorities Act, 28 U.S.C. § 1657(a), Pl. Br. at 1, 4–6; Pl. First Reply at 1–2, the Court concludes that statute authorizes expedition only of the Court's own consideration of an action, not an order to expedite State's processing of Plaintiff's request, which is instead governed by FOIA's compelling-need standard, *see* 5 U.S.C. § 552(a)(6)(E)(iv); *see generally Freedom Commc'ns Inc. v. F.D.I.C.*, 157 F.R.D. 485, 486–87 (C.D. Cal. 1994) (explaining the distinct function of § 1657).

a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity." *Bloomberg, L.P. v. U.S. Food & Drug Admin.*, 500 F. Supp. 2d 371, 377 (S.D.N.Y. 2007) (quoting *Al-Fayed v. C.I.A.*, 254 F.3d 300, 310 (D.C. Cir. 2001)).

The Court has serious doubts that Plaintiff's request demonstrates the adequate urgency. Proclamation 9945 was enjoined before going into effect and that injunction had been in place for nearly three weeks before Plaintiff submitted its FOIA request to Defendants. *See Doe #1*, 414 F. Supp. 3d at 1319 (Proclamation 9945 enjoined November 3); Schwarz Decl., Ex. 1 (FOIA request submitted November 21). That injunction was still in place when Plaintiff filed its second motion to expedite. And Proclamation 9945 has since been revoked by President Biden. While the Court agrees that, as Plaintiff has shown, Proclamation 9945 is both newsworthy and of importance to the general public, Plaintiff's request likely does not implicate the level of exigency necessary to compel expedited processing. *See Al-Fayed*, 254 F.3d at 310 ("Although these topics may continue to be newsworthy, none of the events at issue is the subject of a currently unfolding story."); *Wadelton v. Dep't of State*, 941 F. Supp. 2d 120, 123 (D.D.C. 2013) (collecting cases).

### B. As Soon as Practicable

As of the latest status update, there is still considerable distance between the parties' proposals. State expressed a commitment to process 300 pages of documents each month, which it contends was its standard pre-pandemic rate. Second Statute Update at 3. Plaintiff previously requested that State process 1,500 pages each month, and now requests that State process the remaining 2,600 pages of documents by November 30, 2021. Pl. Third Reply.

The Court concludes that even if Plaintiff's request qualified for expedited processing, it would still find that State's obligation to process the request "as soon as practicable" does not require the Court to grant Plaintiff's proposed expedition schedule. Three considerations, supported by credible evidence submitted by State, leads to this conclusion.

First, the COVID-19 pandemic continues to constrain State's capacity to process FOIA requests. Early in the pandemic, State's processing capacity fell by 96 percent. Weetman Decl. ¶ 24, Dtk. No. 23. This disruption caused State to "pause processing in approximately 95 FOIA litigation cases" and to undergo a significant transition of its personnel to remote work. *Id.* ¶¶ 26–33. State represents that approximately 75% of its FOIA personnel continue to telework, which, despite efforts to improve technological capabilities, constrains production. Second Status Update at 2; *see also* Stein Decl. ¶¶ 6–8, Dkt. No. 31. Processing is also constrained by State's need to consult over documents with other executive agencies who have similarly had to adapt to the pandemic. *See* Weetman Decl. ¶¶ 23, 31; Stein Decl. ¶ 9. Despite these challenges, however, State represents that its capacity continues to recover as its remote-processing procedures improve. *See* Second Status Update at 2.

Plaintiff responds that "State should not be permitted to continue to use the pandemic to excuse withholding documents and obscuring government activity." Second Motion at 1. Yet the Court finds State's evidence of these constraints to be credible. *See Brennan Ctr. for Just.*, 300 F. Supp. 3d 540, 549 (S.D.N.Y. 2018). Notably, courts have identified similar constraints on FOIA capacity across a range of federal agencies. See, e.g., *Teo v. IRS*, No. 20-81351-Civ, 2021 WL 4045003, at *7 (S.D. Fla. Aug. 20, 2021) ("It cannot seriously be questioned that the COVID-19 pandemic has caused unexpected and uncontrollable delays in the processing of various matters across all agencies . . . ."); *N.Y. Times Co. v. Def. Health Agency*, No. 21-CV-566

7

(BAH), 2021 WL 1614817, at *6 (D.D.C. Apr. 25, 2021) (observing "unpredictable exceptional circumstances saddling the agencies with an increased workload"); *Huddleston v. Fed. Bureau of Investigation*, No. 4:20-CV-447, 2021 WL 327510, at *2 (E.D. Tex. Feb. 1, 2021).

Courts in this district have responded to the effects of COVID-19 by reducing or eliminating State's obligation to process FOIA documents. *See, e.g.*, *Adhikaar v. U.S. Dep't of State*, No. 19-CV-05881-GHW, Dkt. No. 63 (S.D.N.Y. Aug. 21, 2021) (imposing no minimum production); *Lederman et al v. U.S. Dep't of State*, No. 20-CV-04011-LTS, Dkt. No. 28 (S.D.N.Y. July 19, 2021) (parties agreed to processing 300 pages each month). Most instructive to the Court is *Open Society Justice Initiative v. Central Intelligence Agency*, No. 19-CV-00234-PAE (S.D.N.Y.), in which Judge Engelmayer had ordered State to produce documents at an exceptionally high rate of 5,000 pages per month. *Open Soc'y Just. Initiative v. Cent. Intel. Agency*, 399 F. Supp. 3d 161, 167 (S.D.N.Y. 2019) (finding the FOIA request to be of "paramount public importance and urgency"); *see also* Weetman Decl. ¶ 42 (calling this order "the most demanding [State] has faced in recent memory"). Yet even there, Judge Engelmayer granted State's request to stay its production requirement, a stay that remains in place today because of State's continued constraints. No. 19-CV-00234-PAE, Dkt. No. 145 (Mar. 30, 2020); Dkt. No. 245 (Sept. 14, 2021).

Second, some burdens of State's FOIA obligations predate the pandemic as the number of requests, and resulting litigation, grew dramatically beginning in 2016. *See* Weetman Decl. ¶¶ 34–44. State represents that in September 2021 it has outstanding obligations in approximately 190 FOIA litigations and a backlog of 15,600 FOIA requests. Second Status Update at 3 (citing Weetman Decl. ¶¶ 4–11). In fact, this burden is "even heavier than it was one year ago." *Id.* Also relevant is State's representation that the processing yet to be completed in

8

this case is more time-intensive than processing already completed because it will require a greater degree of consultation with other executive agencies. *Id.* at 3.  Plaintiff does not provide any reason for the Court to question State's representations, which are explained with specificity.

Third, State's capacity to process FOIA requests is a finite resource, which means that ordering faster production here would necessarily slow production in other cases.  See *Open Soc'y Just. Initiative*, 399 F. Supp. 3d at 167; *Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't*, 236 F. Supp. 3d 810, 816 (S.D.N.Y. 2017) (explaining that this was a primary concern of Congress in drafting the expedited-processing provision).  As State explains, implementing Plaintiff's request would require it to redirect "thinly stretched resources at the expense of other FOIA cases, . . . which would halt or dramatically reduce the Department's ability to process those other cases" and could "jeopardize the Department's ability to comply with court orders."  Stein Decl. ¶ 16.

Plaintiff contends that its proposed production schedule is nevertheless practicable, pointing to orders issued by courts in this district that required agencies to produce thousands of pages each month.  *See, e.g.*, Second Motion, Ex. 2; Dkt. No. 15, Attach. 1.  But even in typical times, such orders were far from the norm in FOIA cases.  *See* State First Resp. at 16 (collecting cases).  More importantly, every example that Plaintiff cites predates the COVID-19 pandemic and its impact on State's processing capacity.

The Court finds that State's capacity to process Plaintiff's request remains significantly constrained.  *See Carney v. U.S. Dep't of Just.*, 19 F.3d 807, 812 (2d Cir. 1994) (according "a presumption of good faith" to government affidavits in FOIA litigation).  It therefore determines that Plaintiff's request that State produce 2,600 pages by November 30, 2021, is not practicable.  Yet the Court also appreciates that State's processing capacity continues to improve and that the

costs of delayed production only increase over time.  *See Brennan Ctr. for Just.*, 300 F. Supp. 3d at 546; *Elec. Priv. Info. Ctr.*, 416 F. Supp. 2d at 40 (acknowledging that "stale information is of little value" (citation omitted)).  Accordingly, the Court concludes that State shall increase its rate to process 400 pages of relevant documents each month, which will complete State's production two months earlier than its initial proposal.

Even if a higher rate of production were in some way possible, the Court would further find, taking account of its "broad discretion to determine a reasonable processing rate for a FOIA request" as well as "the size and compelling need of [Plaintiff's] request compared to others," that processing 400 pages each month complies with State's FOIA obligations.  *Colbert v. Fed. Bureau of Investigation*, No. 16-CV-1790 (DLF), 2018 WL 6299966, at *3 (D.D.C. Sept. 3, 2018).

### C. *Vaughn*-Index Request

Plaintiff also requests in its latest reply that all three Defendants produce *Vaughn* indices by December 15, 2021, so that it may "begin evaluating them for challenges to exemptions and adequacy of search."  Pl. Third Reply; *see also* Second Motion at 2 (requesting a *Vaughn* index from State).  Such indices are especially necessary here, Plaintiff argues, given that State's documents produced as of September 2020 "are so heavily redacted that they are of no functional use."  Second Motion at 2 (citing Ex. 1).

The Court has the authority to compel preparation of *Vaughn* indices.  *Brennan Ctr. for Just.*, 300 F. Supp. 3d at 547.  "Preparation of a *Vaughn* index requires agencies to itemize and index the documents requested, segregate their disclosable and non-disclosable portions, and correlate each non-disclosable portion with the FOIA provision which exempts it from disclosure."  *Ferguson v. F.B.I.*, 722 F. Supp. 1137, 1144 (S.D.N.Y. 1989) (cleaned up).  The

index "permit[s] the court system effectively and efficiently to evaluate the factual nature of disputed information." *Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973). As such, it is "a necessary aspect" of later litigation over State's claimed exemptions. *Brown v. Fed. Bureau of Investigation*, 658 F.2d 71, 73 (2d Cir. 1981).

State contends that production of a *Vaughn* index would "directly detract from the resources available to process documents in this case" and that it cannot produce an index until production is complete and redactions finalized. Stein Decl. ¶ 17. It suggests instead that its attorneys be made available "on an informal basis" to "answer reasonable questions" about specific redactions. State Second Resp. at 5.

The Court finds Plaintiff's proposal to be reasonable. The *Vaughn* "procedure is intended to restore the adversarial balance needed to allow the court to reach a just and fair result." *Brown*, 658 F.2d at 74. State's suggestion of an informal, ad hoc approach is unlikely to achieve that same end, particularly when the only documents produced to the Court are almost entirely redacted. The production of *Vaughn* indices is a "more efficient and fair approach." *Brennan Ctr. for Just.*, 300 F. Supp. 3d at 551.

But production of *Vaughn* indices should not further slow the production of documents to Plaintiff, as Plaintiff's request for *Vaughn* indices recognized. Pl. Third Reply (requesting *Vaughn* indices 15 days after production is complete). The Court therefore concludes that each Defendant shall produce a *Vaughn* index the earlier of 21 days after this Order or 21 days after the completion of production of documents to Plaintiff.[6]

---

[6] Plaintiff additionally argues that the other two Defendants have "failed to produce a reasonable number of documents," Second Motion at 2, but State explains that "both [other] agencies have complied with the processing schedules agreed to with plaintiff," State Second Resp. at 5. The Court therefore understands that Plaintiff does not challenge the rate of the other Defendants'

**IV.     Conclusion**

For the reasons above, the Court DENIES IN PART Plaintiff's motion and orders State to process a minimum of 400 pages per month and produce relevant documents to Plaintiff each month. State's document production shall not extend past March 31, 2022, without consent of the Court.

The parties are further ordered to jointly file a status update every other month that details: (1) State's processing rate, (2) State's efforts to improve its processing rate, (3) a specific explanation for State's failure, if any, to process at least 400 pages that month, and (4) the quantity of pages produced to Plaintiff. The first such update shall be filed by October 31, 2021.

Additionally, Defendants shall produce an index as specified in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), by the earlier of October 8, 2021, or 21 days after the completion of production of documents to Plaintiff.

SO ORDERED.

Dated: September 16, 2021
       New York, New York

_____
ALISON J. NATHAN
United States District Judge

---

production but instead the content of that production. To the extent Plaintiff wishes to litigate its objections, it may do so with the assistance of *Vaughn* indices from each Defendant.